## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

CYNTHIA PALACIOS, individually and
on behalf of all others similarly situated,

                                             Case No. 2:21-cv-11815-TGB-EAS

    Plaintiff,

                                             Honorable Terrence G. Berg

v.

ANNIE'S PUBLISHING, LLC,

    Defendant.

### DEFENDANT ANNIE'S PUBLISHING, LLC'S MOTION TO DISMISS

Defendant Annie's Publishing, LLC ("Annie's") respectfully moves this Court to dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, with prejudice.

Pursuant to Local Rule 7.1(a), Defendant's counsel certifies that on February 4, 8, and 14, 2022, they conferred with Plaintiff's Counsel to discuss the basis of the relief sought in this Motion.  Plaintiff's counsel stated that he would oppose the Motion.

The basis of this Motion is that Plaintiff's FAC should be dismissed with prejudice on two grounds.  First, Annie's moves to dismiss under Rule 12(b)(6) because Plaintiff's claim for invasion of privacy in violation of the Michigan Michigan's "Preservation of Personal Privacy Act" ("PPPA") is time-barred, under

the applicable three-year statute of limitations, MCL § 600.5805(2). In the alternative, pursuant to Rule 12(b)(1), Plaintiff lacks standing because she has not plausibly alleged any concrete injury-in-fact.

Dated: 03/03/2022                    Respectfully submitted,

                                     STEPTOE & JOHNSON LLP

                                     */s/ Meegan Brooks*
                                     Stephanie Sheridan
                                     Meegan Brooks
                                     One Market Plaza
                                     Spear Tower, Suite 3900
                                     San Francisco, CA 94105
                                     Tel: (415) 365-6700
                                     Fax: (415) 365-6699
                                     ssheridan@steptoe.com
                                     mbrooks@steptoe.com
                                     skundu@steptoe.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

CYNTHIA PALACIOS, individually and
on behalf of all others similarly situated,

       Case No. 2:21-cv-11815-TGB-EAS

     Plaintiff,

       Honorable Terrence G. Berg

v.

ANNIE'S PUBLISHING, LLC,

     Defendant.

## BRIEF IN SUPPORT OF DEFENDANT ANNIE'S PUBLISHING, LLC'S MOTION TO DISMISS

## **STATEMENT OF ISSUES PRESENTED**

1. Is Plaintiff's claim under the Michigan Preservation of Personal Privacy Act ("PPPA") time-barred by the three-year statute of limitations in MCL § 600.5805(2), just like traditionally recognized common law invasion of privacy claims?

Defendant Answers: YES.

2. Is Plaintiff pleading a bare statutory violation of the PPPA without any allegations of suffering actual damages, and therefore unable to establish standing under Article III of the U.S. Constitution?

Defendant Answers: YES.

i

## <u>STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY</u>

The controlling authority for this Motion includes:

1. MCL § 600.5805(2)

2. *Loc. 1064, RWDSU AFL-CIO v. Ernst & Young,* 535 N.W.2d 187 (Mich. 1995)

3. *Derderian v. Genesys Health Care Sys.*, 263 Mich. App. 364, 689 N.W.2d 145 (2004)

4. *Green v. Lansing Automakers Fed. Credit Union,* No. 342373, 2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019)

5. *Garg v. Macomb Cty. Cmty. Mental Health Servs.,* 696 N.W.2d 646 (Mich. 2005)

6. *McCree v. Cont'l Mgmt., LLC,* No. 351171, 2021 WL 1050115 (Mich. Ct. App. Mar. 18, 2021)

7. *Lin v. Crain Commc'ns, Inc*., No. 19-11889, 2020 WL 248445 (E.D. Mich. Jan. 16, 2020)

8. *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021)

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................1

FACTUAL BACKGROUND .................................................................2

    A.    Plaintiff's Allegations..............................................................2

    B.    Plaintiff Attempts to Bring this Lawsuit under the 1989 Version of the PPPA, Not the Newly Amended 2016 Version ..............................3

ARGUMENT .........................................................................................5

I.    This Action Is Time-Barred..........................................................5

    A.    Legal Standard Applicable to Motions Under Rule 12(b)(6) ..............5

    B.    Section 5805's Three-Year Statute of Limitations Governs Plaintiff's Claims and Bars her Case .....................................................6

    C.    Plaintiff's PPPA Claim Seeks Damages "for an Injury to a Person" ...9

    D.    The "Catch-All" Six Year Limitations Period Does Not Apply.........14

II.    Plaintiff Lacks Article III Standing Because She Does Not Allege A Personal Injury Closely Analogous to a Common Law Tort .......................19

    A.    Legal Standard Applicable to Motions Under Rule 12(b)(1) .............19

    B.    Plaintiff Lacks Standing Because She Does Not Allege a Concrete Injury With a "Common Law Analogue" ...........................................20

CONCLUSION ....................................................................................23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anzaldua v. Neogen Corp.*,
    292 Mich. App. 626 (Mich. App. 2011) ................................................9

*Arent v. Hatch*,
    349 N.W.2d 536 (Mich. Ct. App. 1984) ............................................8

*Boelter v. Advance Mag. Publishers Inc.*,
    210 F. Supp. 3d 579 (S.D.N.Y. 2016) ..............................................12

*Boelter v. Hearst Comm's, Inc.*,
    269 F. Supp. 3d 172 (S.D.N.Y. 2017) ...............................8, 9, 13, 22

*Bufalino v. Michigan Bell Tel. Co.*,
    404 F.2d 1023 (6th Cir. 1968) ..........................................................16

*Callagher v. Chrysler Corporation*,
    613 F.2d 167 (6th Cir. 1980) ............................................................17

*Carroll v. Wilkerson*,
    782 F.2d 44 (6th Cir.1986) ...............................................................17

*Cataldo v. U.S. Steel Corp.*,
    676 F.3d 542 (6th Cir. 2012) ..............................................................5

*Cellasto Corp. v. International Tel. & Tel. Corp.*,
    215 USPQ 998 (E.D.Mich.1982) ......................................................16

*Consol. Rail Corp. v. Yashinsky*,
    170 F.3d 591 (6th Cir. 1999) ..............................................................6

*Cooper v. Team Wellness (Mental Health) Services Supervisor*,
    18-1162, 2018 WL 7360647 (6th Cir. Oct. 11, 2018) .........................8

*Coulter-Owens v. Time Inc.*,
    695 F. App'x 117 (6th Cir. 2017) .........................................5, 11, 22

*Dabish v. McMahon*,
    818 F. App'x 423 (6th Cir. 2020) ...............................................16, 19

*Daniel v. DTE Energy*,
    No. 2:11-CV- 13141, 2012 WL 12925071 (E.D. Mich. Aug. 30,
    2012) ..................................................................................................8

*In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*,
    756 F.3d 917 (6th Cir. 2014) ...............................................................19

*Derderian v. Genesys Health Care Sys.*,
    689 N.W.2d 145 (Mich. Ct. App. 2004)...............................................8

*DiPonio Const. Co., Inc. v. Rosati Masonry Co., Inc.*,
    631 N.W.2d 59 (Mich. Ct. App. 2001).........................................17, 18

*Edwards v. Hearst Communications, Inc.*,
    No. 15-cv-9279, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016) ........8, 9

*EEOC v. Detroit Edison*,
    515 F.2d 301 (6th Cir. 1975)*, remanded on other grounds*, 431
    U.S. 951, 97 S.Ct. 2668, 53 L.Ed.2d 267 (1977)...............................17

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ..............................................................13

*El v. City of Livonia*,
    No. 17-13190, No. 17-13190, 2018 WL 4223500 (E.D. Mich. Aug.
    28, 2018) ............................................................................................16

*Garg v. Macomb Cty. Cmty. Mental Health Servs.*,
    472 Mich. 263 (2005) ..............................................................7, 15, 19

*GMC v. Lanard Toys, Inc.*,
    468 F.3d 405 (6th Cir. 2006) ..............................................................16

*Goldsby v. Ford Motor Co.*,
    183 F. Supp. 2d 943 (E.D. Mich. 2001) .............................................17

*Green v. Lansing Automakers Fed. Credit Union*,
    342373, 2019 WL 3812108 (Mich. Ct. App. Aug. 13, 2019) ..............8

*Herrin v. Dunham*,
    481 F. Supp. 2d 854 (E.D. Mich. 2007) ..................................6, 14, 17

*Huhtala v. Travelers Ins. Co.*,
  257 N.W.2d 640 (Mich. 1977)........................................................................8, 10

*Jacob v. Absolute Motor Cars, Inc.*,
  353651, 2021 WL 4143045 (Mich. App. Sept. 9, 2021)....................................16

*Krueger v. U.S.*,
  17-CV-10574, 2017 WL 5467743 (E.D. Mich. Nov. 14, 2017) ........................16

*Krum* v. *Sheppard*,
  255 F. Supp. 994 (W.D. Mich. 1966) ..................................................................7

*Lewis v. Casey*,
  518 U.S. 343 (1996)..........................................................................................19

*Lin v. Crain Commc'ns Inc.*,
  No. 19-11889, 2020 WL 248445 (E.D. Mich. Jan. 16, 2020)............3, 11, 12, 13

*Local 1064, RWDSU AFL-CIO v. Ernst & Young*,
  535 N.W.2d 187 (Mich. 1995)..........................................................6, 10, 14, 15

*Magee v. Daimler Chrysler Corp.*,
  693 N.W.2d 166 (Mich. 2005)...........................................................................16

*Major v. Vill. of Newberry*,
  892 N.W.2d 402 (Mich. Ct. App. 2016).............................................................16

*Markham et al. v. National Geographic Partners, LLC*,
  No. 1:19-cv-00232, U.S. District Court for the Western District of
  Michigan, ............................................................................................................9

*Marks v. Hulstrom*,
  No. 294453, 2010 WL 2134303 (Mich. Ct. App. May 27, 2010).......................16

*Marlowe v. Fisher Body*,
  489 F.2d 1057 (6th Cir. 1973) ...........................................................................17

*Marshall v. Chrysler Corp.*,
  378 F. Supp. 94 (E.D. Mich. 1974) *superseded by statute as stated*
  *in Stevens v. Tenn. Valley Auth.*, 712 F.2d 1047 (6th Cir. 1983) ......................17

*McCree v. Cont'l Mgmt., LLC*,
  No. 351171, 2021 WL 1050115 (Mich. Ct. App. Mar. 18, 2021)......................15

*Miller-Davis Co. v. Ahrens Const., Inc.*,
    802 N.W.2d 33 (2011) ............................................................................7

*Moeller v. Am. Media, Inc.*,
    235 F. Supp. 3d 868 (E.D. Mich. 2017) .....................................11, 22

*National Sand, Inc. v. Nagel Construction, Inc.*,
    451 N.W.2d 618 (Mich. Ct. App. 1990)...............................7, 17, 18

*New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*,
    336 F.3d 495 (6th Cir. 2003) ..............................................................5

*Palmer Park Square, LLC v. Scottsdale Ins. Co.*,
    878 F.3d 530 (6th Cir. 2017) ...............................................17, 18, 19

*Perlin v. Time Inc.*,
    237 F. Supp. 3d 623 (E.D. Mich. 2017) .....................................12, 13

*Perry v. Cable News Network, Inc.*,
    854 F.3d 1336 (11th Cir. 2017) ........................................................13

*Pratt v. KSE Sportsman Media, Inc.*,
    1:21-CV-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022) ........8, 18, 19, 23

*Rentola v. Dow Jones & Co., Inc.*,
    No. 4:20-cv-11589-SDD-EAS, ECF No. 12 ......................................9

*Seebacher v. Fitzgerald, Hodgman, Cawthorne and King, P.C.*,
    181 Mich. App. 642 (Mich. App. 1989) ...........................................10

*Smith v. Asphalt Specialists, Inc.*,
    190555, 1997 WL 33344052 (Mich. App. Oct. 17, 1997) ..................8

*Spokeo, Inc. v. Robins*,
    578 U. S. 330 (2016)................................................................1, 19, 20

*Stephens v. Worden Ins. Agency, LLC*,
    307 Mich. App. 220, 859 N.W.2d 723 (2014), *appeal denied*, 869
    N.W.2d 614 (Mich. 2015)..................................................................10

*Stewart's Est. v. Armstrong*,
    187 N.W.2d 223 (Mich. 1971), *overruled on other grounds* .......................16, 19

*Stringer v. Bd. of Trustees of Edward W. Sparrow Hosp.*,
    62 Mich. App. 696 (Mich. App. 1975) .............................................................7, 10

*Tillman v. Great Lakes Truck Ctr., Inc.*,
    742 N.W.2d 622 (Mich. Ct. App. 2007) .............................................................16

*Tocarchick v. UAW Region 1*,
    No. 15-CV11329, 2015 WL 5026149 (E.D. Mich. Aug. 21, 2015) ....................5

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ..............................................................................*passim*

*U.S. v. Farah*,
    766 F.3d 599 (6th Cir. 2014) .............................................................................19

*United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
    489 U.S. 749 (1989) ..........................................................................................10

*In re Vizio, Inc. Consumer Privacy Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................................................4, 12, 14

*Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*,
    9 F.4th 357 (6th Cir. 2021) ...............................................................................10

*Whalen v. Roe*,
    429 U.S. 589 (1977) ..........................................................................................10

*Wiggins v. Nationstar Mortg. LLC*,
    No. 14-CV-12680, 2015 WL 4967137 (E.D. Mich. Aug. 20, 2015), *aff'd* (June 23, 2016) ...........................................................................................6

*Wolfe v. Perry*,
    412 F.3d 707 (6th Cir.2005) .............................................................................17

*Yershov v. Gannet Satellite Info. Network, Inc.*,
    204 F. Supp. 3d 353 (D. Mass. 2016) ...............................................................14

**Statutes**

18 U.S.C. § 2710 ....................................................................................................3

28 U.S.C. § 1332(d)(2) ...........................................................................................5

42 U.S.C. § 1981 ....................................................................................17

42 U.S.C. § 1983 ....................................................................................17

Elliott-Larsen Civil Rights Act § 37.2010 ...........................................15

Labor Management Relations Act, § 301 ..............................................17

MCL § 445.1712 (1989) ..........................................................................4

MCL § 500.2006(4) ...............................................................................18

MCL § 570.151 ......................................................................................18

MCL § 600.2919a ..................................................................................16

MCL § 600.2940(1) ...............................................................................16

MCL § 600.5805(1), (2).............................................................................6

MCL § 600.5805(2) ..........................................................................1, 8, 9

MCL § 600.5805(8) ...............................................................................16

MCL § 600.5813 ....................................................................................14

MCL § 750.147b .....................................................................................16

Mich. Pub. Act No. 92 (codified at MCL §§ 445.1715(2)(a)-(b)) ...........5

Mich. Pub. Act. No. 206 (codified at MCL § 445.1715(2)(a) until
     amended by 2016 Mich. Pub. Act No. 92) ...........................................4

Mich. Pub. Act No. 378 .........................................................................11

**Other Authorities**

1988 U.S.C.C.A.N. 4342-6 ......................................................................13

http://www.legislature.mi.gov/documents/ 1989-
     1990/billanalysis/House/pdf/1989-HLA-4694-A.pdf...........................4

http://www.legislature.mi.gov/documents/ 1989-
     1990/billanalysis/Senate/pdf/1989-SFA-4694-A.pdf...........................4

Restatement (First) of Torts § 867 (1939) ................................................................11

S.Rep. No. 100–599 (1988) ......................................................................................13

Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4
    Harv. L. Rev. 193, 197–213 (1890) ...................................................................11

William L. Prosser, *Privacy*, 48 Cal. L. Rev. 383, 389-407 (1960) .......................11

## **INTRODUCTION**

This Motion involves a single question: *Does Plaintiff's claim under Michigan's "Preservation of Personal Privacy Act" ("PPPA") allege a personal injury?* Plaintiff's First Amended Complaint ("FAC") implicitly argues that the answer is "yes" for purposes of establish standing, but "no" for purposes of avoiding the applicable statute of limitations. She cannot have it both ways.

Under Michigan law, ***any*** claim alleging "injury to a person or property" must be brought within three years of the event giving rise to the claim. MCL § 600.5805(2) ("Section 5805"). Courts have consistently applied Section 5805's three-year limitations period to invasion of privacy claims. Here, the basis of Plaintiff's case is her allegation that Annie's invaded her privacy by disclosing her "private reading information." By her own admission, however, this happened over five years ago. Her case is therefore time-barred.

If Plaintiff argues or the Court determines that Plaintiff did not, in fact, suffer a personal injury traditionally recognized in the common law, then she lacks Article III standing, which requires an injury-in-fact that has "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (quoting *Spokeo, Inc. v. Robins*, 578 U. S. 330, 340 (2016), as revised (May 24, 2016)).

As demonstrated in detail below, Plaintiff is caught in a double bind: either she has alleged a personal injury analogous to a traditional common law tort claim, in which case she has standing but her claim is time-barred; or if she has alleged a purely statutory injury, then she lacks standing to sue. Either way, Plaintiff's FAC should be dismissed with prejudice because no further opportunity to plead additional allegations can save these fatal flaws in her case.

## FACTUAL BACKGROUND

### A.     Plaintiff's Allegations

Founded in 1925, Annie's is a third-generation family business providing crafts magazines to subscribers, with titles such as *Crochet!*, *Quilter's World*, *Just CrossStitch*, *Farmhouse*, and *Country Sampler*.

Plaintiff alleges that she subscribed to *Crochet!* magazine sometime prior to July 30, 2016. FAC ¶ 1. The crux of her lawsuit is that Annie's allegedly included her name and address on a list of Annie's subscribers, which she alleges it sold to third parties. *Id*. at ¶ 1. Plaintiff characterizes her name and address as "Private Reading Information." *Id*.

Plaintiff's entire case hinges on a single cause of action under Michigan's PPPA, which she purports to bring on behalf of "all Michigan residents who, at any point during the relevant pre-July 30, 2016 time period, had their Private Reading Information disclosed to third parties by [Annie's] without consent." *Id*. at ¶ 49.

She seeks statutory penalties of $5,000 *per* class member, in addition to attorneys' fees and costs.

### B.   Plaintiff Attempts to Bring this Lawsuit under the 1989 Version of the PPPA, Not the Newly Amended 2016 Version

The PPPA was enacted almost thirty-five (35) years ago in response to the leaking of then-Supreme Court Justice Nominee Robert Bork's video rental history, shortly after Congress enacted the federal Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710.[1]   HB 5331, First Analysis (6-15-88); *see also Lin v. Crain Commc'ns Inc*., No. 19-11889, 2020 WL 248445, at *2 (E.D. Mich. Jan. 16, 2020). The House Legislative Analysis for the bill at the time explained, "[m]any in Michigan [] believe that one's choice in videos, records, and books is nobody's business but one's own, and suggest the enactment of a statute to explicitly protect a consumer's privacy in buying and borrowing such items." HB 5331, First Analysis (6-15-88).

To achieve this goal, the PPPA codifies the common law tort of invasion of privacy in the context of disclosure of video rental and reading materials.  The 1989 version of the statute (under which Plaintiff asserts her claim) provides that, subject to certain exceptions, any person:

---

[1] Michigan's PPPA is sometimes also referred to as the "Video Rental Privacy Act" or "VRPA" because of its similarity to the federal VPPA and other states' video rental privacy laws.

> Engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings shall not disclose to any person, other than the customer a record or information concerning the purchase, lease, rental or borrowing of those materials by a customer that indicates the identity of the customer.

MCL § 445.1712 (1989).

As originally enacted, the PPPA did not authorize civil penalties.  *See* 1988 Mich. Pub. Act. 378.  In 1989, however, the Michigan legislature amended the PPPA to permit recovery of "[a]ctual damages … or $5,000.00, whichever is greater." 1989 Mich. Pub. Act. No. 206 (codified at MCL § 445.1715(2)(a) until amended by 2016 Mich. Pub. Act No. 92).  This provision was added so that "those ***harmed*** by illegal disclosures could obtain some recompense"[2] and provided "the right to collect ***damages*** for ***harm*** done when details on a person's rentals or purchases are disclosed."[3]

The Michigan Legislature amended the PPPA again in 2016, in response to a wave of federal class action lawsuits demanding tens or hundreds of millions of dollars in damages, even where nobody was injured.  The Legislature eliminated the statutory $5,000 penalty and clarified that plaintiffs must prove there are "actual

---

[2] *Privacy: Sales, Rentals of Videos, etc*., House Legislative Analysis Section, H.B. No. 4694, May 11, 1989, found at  http://www.legislature.mi.gov/documents/ 1989-1990/billanalysis/House/pdf/1989-HLA-4694-A.pdf (emphasis added).

[3] *Privacy: Sales, Rentals of Videos, etc*., Senate Fiscal Agency, Bill Analysis, H.B. No. 4694, Nov. 10, 1989, found at http://www.legislature.mi.gov/documents/ 1989-1990/billanalysis/Senate/pdf/1989-SFA-4694-A.pdf (emphasis added).

damages" to recover under the Act. *See* 2016 Mich. Pub. Act No. 92 (codified at MCL §§ 445.1715(2)(a)-(b)). This amendment took effect July 31, 2016, but was not retroactive. *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017).

Plaintiff does not purport to have suffered any actual damages. Instead, she explicitly brings her claim under the 1989 version of the PPPA, which ceased to exist as of July 31, 2016, in order to take advantage of the $5,000 statutory penalty from the pre-amendment version of the law, which now requires actual damages in order to recover. *See* FAC ¶¶ 1, 3, 9, 46, 49, 60-72.[4]

## ARGUMENT

## I.    This Action Is Time-Barred

### A.    Legal Standard Applicable to Motions Under Rule 12(b)(6)

Where "the allegations in the complaint affirmatively show that the claim is time-barred …. dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); *see also New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *Tocarchick v. UAW Region 1*, No. 15-CV11329, 2015 WL 5026149, at *4 (E.D.

---

[4] Plaintiff is also relying on the statutory penalty to satisfy the Class Action Fairness Act's amount in controversy requirement for federal jurisdiction (28 U.S.C. § 1332(d)(2)), because her claims would not be not permitted in Michigan state court. *See* MCR, Rule 3.501(A)(5) ("An action for a penalty or minimum amount of recovery without regard to actual damages imposed or authorized by statute may not be maintained as a class action unless the statute specifically authorizes its recovery in a class action.") Put otherwise: Plaintiff seeks to bring claims in this Court, under Michigan law, that she could not bring in Michigan's own courts.

Mich. Aug. 21, 2015) (granting motion to dismiss based on statute of limitations);

*Wiggins v. Nationstar Mortg. LLC*, No. 14-CV-12680, 2015 WL 4967137, at *2

(E.D. Mich. Aug. 20, 2015), *aff'd* (June 23, 2016) (same).

> **B.  Section 5805's Three-Year Statute of Limitations Governs Plaintiff's Claims and Bars her Case**

Plaintiff's lawsuit is time-barred under Section 5805,[5] which provides in

relevant part:

> (1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless … the action is commenced within the periods of time prescribed by this section.
>
> (2) Except as otherwise provided in this section, the period of limitations is ***3 years*** after the time of the death or injury ***for all actions*** to recover damages for the death of a person ***or for injury to a person*** or property.

MCL § 600.5805(1), (2) (emphasis added).[6]  This statute is self-explanatory: ***all***

***claims*** for "injury to a person" must be brought within three years.  *Local 1064,*

*RWDSU AFL-CIO v. Ernst & Young*, 535 N.W.2d 187, 189-90 (Mich. 1995); *Herrin*

*v. Dunham*, 481 F. Supp. 2d 854, 857 (E.D. Mich. 2007) ("[i]n Michigan, one statute

of limitations applies to all personal injury claims.").

---

[5] As a federal court sitting in diversity jurisdiction, this Court applies Michigan's statutes of limitations.  *See Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 594 (6th Cir. 1999).

[6] Subdivision (2) of Section 600.5805 was previously codified in several other subdivisions, including Subdivisions (10), (9), (8) and (7) of Section 5805.  Although the subdivision number has changed, the substance of the subdivision has remained fundamentally unchanged.

Where, as here, the statute is unambiguous, the Court must apply it as written.

The Michigan Supreme Court has explained:

> Fundamental canons of statutory interpretation require us to discern and give effect to the Legislature's intent as expressed by the language of its statutes. If such language is unambiguous, as most such language is, we presume that the Legislature intended the meaning clearly expressed--no further judicial construction is required or permitted, and the statute must be enforced as written.

*Garg v. Macomb Cty. Cmty. Mental Health Servs*., 472 Mich. 263, 281 (2005) (overruling the "continuing violations" doctrine as inconsistent with Section 5805's plain language).

Michigan courts "take[] an expansive view of what constitutes 'injuries to persons'" under Section 5805, defining the term to include "injuries resulting from invasions of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law." *National Sand, Inc. v. Nagel Construction, Inc.*, 451 N.W.2d 618, 621-22 (Mich. Ct. App. 1990); *Stringer v. Bd. of Trustees of Edward W. Sparrow Hosp*., 62 Mich. App. 696, 701 (Mich. App. 1975).  This definition "has a broader meaning than physical injuries and includes such things as . . . the deprivation of civil rights." *National Sand*, 451 N.W.2d at 621-22 (citing *Krum* v. *Sheppard*, 255 F. Supp. 994, 999 (W.D. Mich. 1966)).  Under Section 5805, a claim is for a "personal injury" if it is "founded on a 'nonconsensual' duty or one 'imposed by law'" rather than upon a "'consensual' duty or obligation or the breach of an 'express promise.'"  *Miller-Davis Co. v.*

*Ahrens Const., Inc.*, 802 N.W.2d 33, 39 (2011); *see also Huhtala v. Travelers Ins. Co.*, 257 N.W.2d 640, 644 (Mich. 1977) (Section 5805 applies "[w]here the nature and origin of an action to recover damages for injury to persons or property is a duty imposed by law").

Consistent with this broad definition of "injury to a person," Michigan courts apply Section 5805's three-year statute of limitations in cases alleging common law invasions of privacy. *See Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 159 (Mich. Ct. App. 2004); *Green v. Lansing Automakers Fed. Credit Union*, 342373, 2019 WL 3812108, at *4 (Mich. Ct. App. Aug. 13, 2019).[7]

Several courts have applied Section 5805 to PPPA claims specifically. *See Edwards v. Hearst Communications, Inc.*, No. 15-cv-9279, 2016 WL 6651563, at *1 (S.D.N.Y. Nov. 9, 2016) (noting that "a three-year statute of limitations admittedly governs [Plaintiff's PPPA] claims"); *Boelter v. Hearst Comm's, Inc.*, 269 F. Supp. 3d 172, 187 (S.D.N.Y. 2017) (applying three-year statute of limitations to PPPA claims); *but see Pratt v. KSE Sportsman Media, Inc.*, 1:21-CV-11404, 2022

---

[7] *See also Cooper v. Team Wellness (Mental Health) Services Supervisor*, 18-1162, 2018 WL 7360647, at *2 (6th Cir. Oct. 11, 2018) ("The statute of limitations for the invasion of privacy and fraud in Michigan is three years.") (citing Mich. Comp. Laws Ann. § 600.5805(2)); *Arent v. Hatch*, 349 N.W.2d 536, 539 (Mich. Ct. App. 1984); *Smith v. Asphalt Specialists, Inc*., 190555, 1997 WL 33344052, at *4 (Mich. App. Oct. 17, 1997) ("The period of limitation applicable to a claim of invasion of privacy is three years"); *Daniel v. DTE Energy*, No. 2:11-CV- 13141, 2012 WL 12925071, at *4 (E.D. Mich. Aug. 30, 2012) (same).

WL 469075 (E.D. Mich. Feb. 15, 2022).   Tellingly, Plaintiff's own counsel here are on record in public pleadings telling courts in several different cases that the statute of limitations for PPPA claims is three-years.[8]   It was not until Section 5805's limitations period expired that they argued that a longer period should apply.

## C.  Plaintiff's PPPA Claim Seeks Damages "for an Injury to a Person"

"In determining whether a statute of limitations applies, this Court looks to the true nature of a complaint, reading the complaint as a whole and looking beyond the parties' labels to determine the exact nature of the claim."   *Anzaldua v. Neogen Corp.*, 292 Mich. App. 626, 631 (Mich. App. 2011) (citation omitted).   Plaintiff cannot use "artful drafting" to plead around the applicable statute of limitations.

---

[8] For example, in responding to a motion to dismiss in another case on untimeliness grounds, plaintiff's counsel unequivocally stated that "[c]laims under the [PPPA] are subject to a 'three year statute of limitations,'" and never invoked the six-year limitations. *Rentola v. Dow Jones & Co., Inc.*, No. 4:20-cv-11589-SDD-EAS, ECF No. 12 at 2 (citing *Boelter* and MCL § 600.5805(2)). In several other cases, in responding to the argument that § 600.5805(2) barred Plaintiffs' PPPA claims, plaintiff's counsel argued that § 600.5805(2)'s 3-year limitations period was tolled, without asserting that a six-year statute of limitations applied. *Markham et al. v. National Geographic Partners, LLC*, No. 1:19-cv-00232, U.S. District Court for the Western District of Michigan, Plaintiff's Response to National Geographic Partner's LLC's Pre-Motion Conference Request, Dkt. 26 (Dec. 17, 2019); *Boelter v. Hearst*, Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss and for Summary Judgment, 2017 WL 4838016 (S.D.N.Y.) (section heading: "VII. HEARST'S ARGUMENT THAT THERE IS NO BASIS TO TOLL THE THREE-YEAR STATUTE OF LIMITATIONS IS WRONG") (emphasis added); *Edwards v. Hearst*, Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss and for Summary Judgment, 2017 WL 4838019 (S.D.N.Y.) (same).

*Stephens v. Worden Ins. Agency, LLC*, 307 Mich. App. 220, 859 N.W.2d 723 (2014), *appeal denied*, 869 N.W.2d 614 (Mich. 2015).[9]

When stripped of its statutory label, the "nature" and "substance" of Plaintiff's alleged injury is that her privacy was invaded—a claim sounds in the traditional tort of invasion of privacy.  "[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989); *see also id*. at 762 ("[C]ases sometimes characterized as protecting 'privacy' have in fact involved ... the individual interest in avoiding disclosure of personal matters, ....") (citing *Whalen v. Roe*, 429 U.S. 589, 598-600 (1977)); *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 362 (6th Cir. 2021) ("Had Ward claimed, for example, that NPAS, Inc. improperly shared

---

[9] *See also Seebacher v. Fitzgerald, Hodgman, Cawthorne and King, P.C.*, 181 Mich. App. 642, 646 (Mich. App. 1989) ("The type of interest harmed, rather than the label given the claim, determines what limitations period controls."); *Loc. 1064*, 449 Mich. at 327 n.10 ("the court may look behind the technical label that plaintiff attaches to a cause of action to the substance of the claim asserted"); *Huhtala v. Travelers Ins. Co.*, 257 N.W.2d 640, 644 (Mich. 1977) (Section 5805 applies "[w]here the nature and origin of an action to recover damages for injury to persons or property is a duty imposed by law"); *Stringer*, 62 Mich. App. 696 ("[W]hat differentiates [Michigan's statutes of limitations] is what the damages are sought 'for'…" In doing so, they "look beyond procedural labels to see exactly what a party's complaint is before deciding whether it should be barred.").

personal information with a third party, … then Ward's alleged harm would more closely resemble an invasion of privacy.").[10]

As discussed above, Michigan enacted the PPPA to protect against an "unwarranted invasion of privacy" and to "preserve personal privacy with respect to the purchase, rental, or borrowing of written materials," because "a person's choice in reading, music, and video entertainment is a private matter." *Lin*, 2020 WL 248445, at *2; *see also* 1988 Mich. Pub. Act No. 378. The statute is grounded in common law privacy interests. As one court explained:

> Subscribers' right to privacy in their personal-reading information is grounded in an interest "traditionally regarded as providing a basis for a lawsuit in English or American courts… Here, the Michigan Legislature recognized subscribers' right to privacy in their personal-reading information, and through the enactment of the PPPA, 'define[d] the injury' and 'articulate[d] the chain of causation that gives rise to the injury.'"

*Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 873 (E.D. Mich. 2017); *see also Coulter-Owens*, 695 F. App'x at 119 (6th Cir. 2017) (describing PPPA claim as

---

[10] The invasion of a person's privacy was first identified as an independent "legal injuria" in Samuel D. Warren and future-Justice Louis Brandeis's seminal article *The Right to Privacy*, where they first identified a broader right "of the individual to be let alone." *See* Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193, 197–213 (1890) (discussing case law involving the public disclosure of private matters); William L. Prosser, *Privacy*, 48 Cal. L. Rev. 383, 389-407 (1960) (observing that there must be "some breach of contract, trust or confidential relation" for a disclosure of information to a limited group of people to be tortious); Restatement (First) of Torts § 867 (1939) (an invasion of privacy is an "unreasonabl[e] and serious[] interfere[nce] with another's interest in not having his affairs known to others or his likeness exhibited to the public ....").

alleging "an invasion of privacy"); *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 589–90 (S.D.N.Y. 2016) ("the harms contemplated by [the PPPA and VPPA] have close ties to those recognized by the common law tort of invasion of privacy."); *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 641 (E.D. Mich. 2017) ("that the right guaranteed by the [PPPA] is similar in kind to other privacy rights that were gradually recognized by American courts over the course of the last century, following the publication of Samuel Warren and Louis Brandeis's landmark article *The Right to Privacy*..."); *Lin*, 2020 WL 248445, at *2 (the PPPA addressed "invasion[s] of a legally protected privacy interest").

Plaintiff does not appear to disagree that the PPPA codifies a right to privacy. She recognizes that the statute was enacted to "further protect its citizens' privacy rights" (FAC ¶ 15), and the allegations in the FAC demonstrate that her PPPA claims are exclusively based on invasion-of-privacy harms.  For example, she claims that Annie's alleged disclosure of her "**Private** Reading Information" "jeopardiz[ed] its subscribers' **privacy**" (*id*. ¶ 33); revealed "**sensitive and private** information" and even her "**most intimate details**" (*id*. ¶¶ 43-47); is a "serious threat" to "consumers' **privacy**" (*id*. ¶ 28); and "violat[es] the 'gut feeling that people ought to be able to read books and watch films **without the whole world watching**.'" (*id.* ¶ 16) (emphasis added throughout). *See also id.* ¶ 35 (discussing growing "consumer

concerns regarding . . . privacy"); *id.* ¶ 52 ("Plaintiff and the Class suffered invasions of their statutorily protected right to privacy").

Plaintiff also relies on the legislative history of the federal VPPA (FAC ¶¶ 14, 18-19), on which the PPPA is based, and which protects against "essentially the same" harm as the PPPA. *Boelter*, 210 F. Supp. 3d at 589–90 ("Both statutes reflect legislative determinations as to what kinds of unauthorized disclosures invade the privacy interests of consumers in the content they consume."); *see also Lin*, 2020 WL 248445, at \*2 (citing 988 Mich. Pub. Acts No. 378 at p. 1559) ("Like the VPPA, [the PPPA] aims to 'preserve personal privacy with respect to the purchase, rental, or borrowing' of written materials, sound recordings, and video recordings."). The VPPA's legislative history could not be clearer that the VPPA was intended to codify a right to privacy. *See, e.g.*, S.Rep. No. 100–599, at 1 (1988) (cited in FAC ¶ 14), reprinted in 1988 U.S.C.C.A.N. 4342-6; *see also* HB 5331, First Analysis (6-15-88) ("S. 2361 helps define the right of privacy by prohibiting unauthorized disclosure of personal information held by video tape providers. The bill attempts to give meaning to, and thus enhance, the concept of privacy for individuals in their daily lives.").[11]

---

[11] Numerous courts have recognized that the VPPA "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340-41 (11th Cir. 2017); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982-84 (9th Cir. 2017) ("the VPPA identifies a substantive right to privacy that suffers any time a video service provider discloses otherwise private information."); *Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 641 (E.D. Mich. 2017) ("the right guaranteed by the

Plaintiff's purported privacy-based allegations are rooted in traditional tort theories, and therefore allege "injuries to a person" within the meaning of Section 5805. The "true nature," "substance," and "origin" of Plaintiff's claims, and the "type of interest [allegedly] harmed" all mirror those of traditional common law claims. Michigan did not double the limitations period for invasion of privacy claims by enacting the PPPA. The same limitations period should therefore apply.

### D.   The "Catch-All" Six Year Limitations Period Does Not Apply

Plaintiff contends that her PPPA claim is governed by Michigan's catch-all statute of limitations, MCL § 600.5813 ("Section 5813"), which provides that "[a]ll other personal actions shall be commenced within the period of 6 years after the claims accrue . . . ." FAC ¶ 1. However, because "Section 5805 is a more specific statute of limitations than § 5813," it "therefore controls if applicable to this action." *Local 1064, RWDSU AFL-CIO v. Ernst & Young*, 535 N.W.2d 187, 189-90 (Mich. 1995). That is, regardless of Section 5813, ***all claims*** for "injury to a person" must be brought within three years. *Id.*; *Herrin v. Dunham*, 481 F. Supp. 2d 854, 857

---

VRPA is similar in kind to other privacy rights that were gradually recognized by *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890)"); *In re Vizio, Inc. Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1215-17 (C.D. Cal. 2017) ("Plaintiffs' VPPA claims are even more deeply rooted in the common law. Warren and Brandeis traced the development of the tort of invasion of privacy in part to cases involving the disclosure of information in breach of a confidential relationship."); *Yershov v. Gannet Satellite Info. Network, Inc.*, 204 F. Supp. 3d 353, 362 (D. Mass. 2016) ("[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person.").

(E.D. Mich. 2007) (applying the three-year statute of limitations to claims under 42 U.S.C. § 1983 and observing that, "[i]n Michigan, one statute of limitations applies to all personal injury claims.").

The fact that Plaintiff has brought her privacy claims under a statute, rather than the common law, is irrelevant.  *See, e.g., Loc. 1064*, 449 Mich. at 327 n.10 ("the court may look behind the technical label that plaintiff attaches to a cause of action to the substance of the claim asserted").  Michigan courts routinely apply Section 5805 to statutory claims that allege injury to persons or property, even where the claims do not codify or mirror a common law tort claim.  For example, in *Garg v. Macomb Cty. Cmty. Mental Health Servs*., 472 Mich. 263, 284; 696 N.W.2d 646 (2005), the Michigan Supreme Court held that statutory employment discrimination claims and retaliation claims under § 37.2010 of the Elliott-Larsen Civil Rights Act on the basis of national origin are subject to Section 5805's three-year limitations period; such claims have no basis in common law.

Similarly, in *McCree v. Cont'l Mgmt., LLC,* No. 351171, 2021 WL 1050115, at *7 (Mich. Ct. App. Mar. 18, 2021), the Michigan Court of Appeals recently held that Section 5805 applied to statutory claims under the Truth in Renting Act and the Housing Law of Michigan (which each created a statutory cause of action with no common-law analog) because those statutes protect "rights imposed upon defendant by law, as opposed to a contractually consented-to-duty." *McCree v. Cont'l Mgmt.,*

*LLC,* No. 351171, 2021 WL 1050115, at \*7 (Mich. Ct. App. Mar. 18, 2021).  Other

examples abound:

- **Wrongful Death Act:** *Stewart's Est. v. Armstrong*, 187 N.W.2d 223, 224 (Mich. 1971), *overruled on other grounds* (applying Section 5805 because "[the Act] is premised upon a tort theory. … Since [it] fails to specify a limitations period, the general tort statute of limitations contains the proper limitations period for wrongful death actions.");

- **Lanham Act**: *Cellasto Corp. v. International Tel. & Tel. Corp*., 215 USPQ 998, 1000 (E.D.Mich.1982) ("the effect of a trademark infringement is the same as the effect of any other injury to property. And thus, from a literal and conceptual standpoint, it would appear that the instant injury fits within the injury to property provisions of MCLA 600.5805(8)."); *GMC v. Lanard Toys, Inc*., 468 F.3d 405, 421 (6th Cir. 2006);

- **Communications Act:** *Bufalino v. Michigan Bell Tel. Co*., 404 F.2d 1023, 1028 (6th Cir. 1968);

- **Rehabilitation Act**: *Krueger v. U.S*., 17-CV-10574, 2017 WL 5467743, at \*5 (E.D. Mich. Nov. 14, 2017);

- **MCL § 600.2919a (statutory conversion):** *Tillman v. Great Lakes Truck Ctr., Inc.*, 742 N.W.2d 622, 623 (Mich. Ct. App. 2007); *Dabish*, 2019 WL 3288931, at \*4; *Jacob v. Absolute Motor Cars, Inc.*, 353651, 2021 WL 4143045, at \*6 (Mich. App. Sept. 9, 2021);

- **MCL § 600.2940(1) (statutory nuisance):** *Marks v. Hulstrom*, No. 294453, 2010 WL 2134303, at \*1 (Mich. Ct. App. May 27, 2010);

- **Elliot Larsen Civil Rights Act***: Magee v. Daimler Chrysler Corp.*, 693 N.W.2d 166, 168 (Mich. 2005); *Major v. Vill. of Newberry*, 892 N.W.2d 402, 408 (Mich. Ct. App. 2016);

- **Ethnic Intimidation Statute (MCL § 750.147b)***: Dabish v. McMahon*, 818 F. App'x 423, 427 (6th Cir. 2020) (holding Section 5805's three-year limitations period applies to statutory claim for ethnic intimidation under MCL § 750.147b); *El v. City of Livonia*, No. 17-13190, No. 17-13190, 2018 WL 4223500 (E.D. Mich. Aug. 28, 2018) (same);

- **Veterans' Re-employment Rights Act:** *Marshall v. Chrysler Corp*., 378 F. Supp. 94 (E.D. Mich. 1974) *superseded by statute as stated in Stevens v. Tenn. Valley Auth*., 712 F.2d 1047 (6th Cir. 1983) (applying Section 5805, *not* the six year period of Section 5813, because Michigan state courts "look[]to the nature of the claim asserted in determining the applicable statute of limitations" and the claim at issue was "essentially one to recover damages for injury to property or person.");

- **Labor Management Relations Act, § 301:** *Goldsby v. Ford Motor Co*., 183 F. Supp. 2d 943, 948 (E.D. Mich. 2001) ("Michigan's three-year statute of limitations for injuries to persons or property, rather than the six-year statute of limitations for breach of contract, applies to an employee's action against the employer under LMRA § 301") (citing *Callagher v. Chrysler Corporation*, 613 F.2d 167 (6th Cir. 1980));

- **42 U.S.C. § 1983**: *Herrin v. Dunham*, 481 F. Supp. 2d 854, 857 (E.D. Mich. 2007); *Wolfe v. Perry,* 412 F.3d 707, 714 (6th Cir.2005); *see also Carroll v. Wilkerson,* 782 F.2d 44, 44 (6th Cir.1986) (cited in *Herrin* and *Wolfe*); and

- **42 U.S.C. § 1981**: *EEOC v. Detroit Edison*, 515 F.2d 301 (6th Cir. 1975)*, remanded on other grounds*, 431 U.S. 951, 97 S.Ct. 2668, 53 L.Ed.2d 267 (1977); *Marlowe v. Fisher Body*, 489 F.2d 1057, 1063 (6th Cir. 1973) ("The deprivation of civil rights is a wrong to the person. Subsection 7 of M.C.L. s 600.5805 most appropriately deals with an action to vindicate the right of employees to be free of discrimination.").

In opposition, Plaintiff will likely argue that *National Sand, Inc. v. Nagel Construction, Inc.*, 451 N.W.2d 618, 625 (Mich. Ct. App. 1990), *DiPonio Const. Co., Inc. v. Rosati Masonry Co., Inc.,* 631 N.W.2d 59 (Mich. Ct. App. 2001) and *Palmer Park Square, LLC v. Scottsdale Ins. Co.*, 878 F.3d 530, 539-40 (6th Cir. 2017) support the application of Section 5813 to Plaintiff's PPPA claim simply because the PPPA is a statute. Not so. The courts in those cases—none of which involved the PPPA—recognized that Section 5805 applies to actions alleging

17

personal injuries.[12]   They only applied Section 5813 because, unlike here, the plaintiffs had not claimed to have suffered personal injury as a result of the statutory violations at issue.[13]

The unpublished decision in *Pratt v. KSE Sportsman Media, Inc*., 1:21-CV-11404, 2022 WL 469075 (E.D. Mich. Feb. 15, 2022) should not change the analysis, either.[14]   There, another court in this district recently held that the PPPA is subject to a six-year limitations period under Section 5813.   The *Pratt* court misread dicta in *Palmer Park Square* to mean that the six-year statute of limitations **always** applies to **every** statutory causes of action unless the relevant statute contains its own, specific statutory limitations period.   *Id.* at 5.

---

[12] *Palmer Park Square*, 878 F.3d at 540 (distinguishing Section 5813 from Section 5805, because the latter "provides specific limitations periods for actions redressing injuries to persons or property"); *National Sand*, 451 N.W.2d at 621-22; *DiPonio*, 631 N.W.2d at 65.

[13] *See, e.g., DiPonio*, 631 N.W.2d at 61-63 (involving violation of Michigan Builders' Trust Fund Act, MCL § 570.151, which required contractors to hold payments they received on construction projects in a trust fund and to use those funds to pay subcontractors and suppliers first, before using the funds for any other purpose.); *Palmer Park Square*, 878 F.3d at 539-40 (involving claim by a business against an insurer seeking the penalty interest provided by MCL § 500.2006(4), which provides "[i]f benefits are not paid [by an insurer] on a timely basis, the benefits paid bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum…")

[14] Around the same time Plaintiff filed the present suit, her counsel filed dozens of other suits under the 1989 version of the PPPA.   *Pratt* is one of those cases.   Motions to dismiss are currently pending in nine other cases, based on similar arguments presented here.

*Pratt*'s broad reading of *Palmer Park Square* could not possibly be correct, given the numerous examples above in which Michigan Supreme Court, the Sixth Circuit (post-*Palmer Park Square*), and others have applied Section 5805 to statutory claims alleging personal injury.  *See, e.g.*, *Garg*, 696 N.W.2d at 659; *Stewart's Est.*, 187 N.W.2d at 224; *Dabish*, 818 F. App'x at 427; *see also In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014) ("On questions of state law, this Court is bound by the rulings of the state supreme court.").  Moreover, given that *Palmer Park* did not involve the PPPA or any other personal injury claims, the *Pratt* court erred in holding that it was "controlling precedent."  Cf. *Pratt*, 2022 WL 469075, at *5; *see also U.S. v. Farah*, 766 F.3d 599, 610 (6th Cir. 2014) (refusing to apply "the most analogous binding precedent" identified by the dissent, where that case was "distinguishable on the facts and therefore provides no guidance").

## II.    Plaintiff Lacks Article III Standing Because She Does Not Allege A Personal Injury Closely Analogous to a Common Law Tort

### A.    Legal Standard Applicable to Motions Under Rule 12(b)(1)

Plaintiff, as the party invoking federal jurisdiction, bears the burden of demonstrating Article III standing.  *Spokeo*, 578 U.S. at 339; *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("named plaintiffs who represent a class must allege and show that they personally have been injured" to confer standing) (internal quotations omitted).    To establish standing, Plaintiff must show, at a minimum, that she

"suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion*, 141 S. Ct. at 2203.

A plaintiff who is "not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's 'compliance with regulatory law'" fails to satisfy Article III. *TransUnion*, 141 S. Ct. at 2206; *id.* at 2204 ("alleging a bare procedural violation" is insufficient on its own). Rather, "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 2205. Moreover, legislative bodies cannot circumvent Article III standing requirements by "enact[ing] an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Id.*

## B. Plaintiff Lacks Standing Because She Does Not Allege a Concrete Injury With a "Common Law Analogue"

In *TransUnion,* the Supreme Court made clear that, to determine whether the plaintiff has alleged a concrete harm, the court must "assess whether the alleged injury to the plaintiff has a ***close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts***." 141 S. Ct. at 2204 (emphasis added, citing *Spokeo,* 578 U.S. at 341). Crucial to the determination here, "[t]hat inquiry asks whether plaintiffs have identified ***a close historical or common-law analogue for their asserted injury***." *Id.* (emphasis added).

20

The *TransUnion* plaintiffs alleged that TransUnion violated the Fair Credit Reporting Act ("FCRA") by failing to follow reasonable procedures to make sure their credit files were accurate, and as a result, incorrectly flagging the plaintiffs as potential terrorists.  The Court divided the class into two subgroups: those whose false credit information was disclosed to third parties, and those whose false credit information was not disclosed to third parties.  The Court ruled that the plaintiffs who had false credit information disclosed to third parties had suffered "concrete injury in fact," because their claim was sufficiently analogous to a traditional claim for defamation.  *TransUnion*, 141 S. Ct. at 2208-09.

However, the Court held that those plaintiffs whose false information had not (yet) been disclosed to a third party had not suffered any "concrete injury," even though their credit files contained false information as a result of TransUnion's statutory violation.  *Id*. at 2212.  This is because, for these plaintiffs, the element of publication necessary for the common law tort of defamation had not been satisfied. *Id*. at 2209-10.

Although Plaintiff says that her information was shared with third parties (albeit, in a conclusory fashion without supporting factual allegations), under *TransUnion*, her conclusory statement, in itself, is insufficient to establish standing. Rather, Plaintiff must allege a common-law analogue for her claim.  Plaintiff has carefully avoided making such allegations here. While Plaintiff claims repeatedly

that Annie's violated her "statutorily protected right to privacy (as afforded by the PPPA)" (FAC ¶ 52, 72, 73; *see also id* ¶ 8 ("statutory privacy rights")), she does not allege that Annie's violated any of her rights outside the statute.  She therefore has not alleged a concrete injury-in-fact under *TransUnion.*

Pre-*TransUnion* PPPA cases do not say otherwise.  Although several such cases found that plaintiffs had standing to bring PPPA claims, these holdings were based on allegations notably absent from Plaintiff's FAC.  For example, the courts specifically explained that the plaintiffs had standing because their privacy was invaded.  *See, e.g.*, *Coulter-Owens*, 695 F. App'x at 121 (holding that a PPPA violation is not a "'bare procedural violation;' it is a violation of the PPPA's most basic substantive protection, the privacy in one's reading materials."); *Boelter*, 192 F. Supp. 3d at 438 ("By its conduct, Defendant deprived Plaintiffs of their right to keep their information private"); *Moeller*, 235 F. Supp. 3d at 873 ("plaintiffs allege that defendants violated their privacy rights by disclosing personal-reading information").  Thus, although these cases did not apply *TransUnion*'s common-law analogue requirement (which, again, came after these decisions were issued), they still found a common-law analogue for the plaintiffs' claims.

*TransUnion* makes clear that Plaintiff cannot establish Article III standing unless she alleges a personal injury with a "***a close historical or common-law analogue.***"  141 S. Ct. at 2204 (emphasis added).  This requirement is irreconcilable

22

with Plaintiff's claim not to be subject to Section 5808.[15]  To the extent Plaintiff

claims to have not suffered a personal injury with a common law analogue, or the

Court makes such a finding, then her case must be dismissed for lack of Article III

standing.

## **<u>CONCLUSION</u>**

For the reasons discussed herein, it is impossible for Plaintiff to establish

standing but avoid the three-year limitations period.  Plaintiff's case must be

dismissed as either untimely or for lack of standing.


Dated: 03/03/2022                                      Respectfully submitted,

                                                       STEPTOE & JOHNSON LLP

                                                       */s/Meegan Brooks*
                                                       Stephanie Sheridan
                                                       Meegan Brooks
                                                       One Market Plaza
                                                       Spear Tower, Suite 3900
                                                       San Francisco, CA 94105
                                                       Tel: (415) 365-6700
                                                       Fax: (415) 365-6699
                                                       ssheridan@steptoe.com
                                                       mbrooks@steptoe.com
                                                       skundu@steptoe.com

---

[15] While the analysis for standing and the statute of limitations claim hinge on the same issue—namely, whether Plaintiff has alleged a claim with a common law analogue—Annie's is not arguing that a statute of limitations would, in itself, operate to deprive Plaintiff of standing.  Cf. *Pratt*, 2022 WL 469075, at *8.